**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| DAVID EVAN SCHANZLE,<br>*Plaintiff*<br><br>**v.**<br><br>SUSANA HABERMAN, JONATHAN P.<br>GEBHART, MICHAEL GALDO, BRAD<br>BARBER, LAUREL VANT, JEFF NEFF,<br>MARK LANE, U.S. MAGISTRATE JUDGE;<br>AND 6 TO 8 UNKNOWN GOVERNMENT<br>AGENTS,<br>*Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **A-18-CV-00933-RP-SH** |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:    THE HONORABLE ROBERT PITMAN
       UNITED STATES DISTRICT JUDGE

Before this Court are: Defendants' Motion to Dismiss, filed on May 1, 2019 (Dkt. No. 18);

Plaintiff's Demand for Return of Property, filed on May 20, 2019 (Dkt. No. 16); and the parties'

related response and reply briefs. On July 15, 2019, the District Court referred the above motions

to the undersigned Magistrate Judge for resolution and Report and Recommendation pursuant to

28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72 and Rule 1 of Appendix C of the Local

Rules of the United States District Court for the Western District of Texas ("Local Rules").

## I. BACKGROUND

On October 22, 2018, Jonathan Gebhart, Special Agent with the Internal Revenue Service

Criminal Investigation Division ("IRS-CID"), submitted a search warrant application to United

States Magistrate Judge Mark Lane, pursuant to Federal Rule Criminal Procedure 41(c), requesting

to search the home and property of David Schanzle as part of an ongoing criminal investigation

into an alleged tax evasion scheme allegedly perpetrated by Schanzle. The warrant application

incorporated the following attachments: (1) a 32-page affidavit of probable cause prepared by Agent Gebhart; (2) "Attachment A," which described the property and structures to be searched; and (3) "Attachment B," which described the evidence, fruits and instrumentalities to be seized during the search. *See* Sealed Dkt. No. 3 in 1:18-MJ-685-ML. Magistrate Judge Lane signed the warrant application and affidavit of probable cause and issued the search warrant ("Warrant") on October 22, 2018. *See id.*[1]

On October 24, 2018, at approximately 10:30 a.m., Agent Gebhart and several other federal agents executed the Warrant and conducted a search of Schanzle's home and business, Gardens of the Ancients, located at 4800 Yager Lane, Manor, TX 78652. Schanzle alleges that when the federal agents arrived, he requested a copy of the Warrant. Schanzle contends that he was presented with a one-page copy of the Warrant that (1) failed to have the affidavit of probable cause attached to it, and (2) failed to describe the name of the person or the description of the property to be searched. Schanzle alleges the federal agents proceeded to perform a search of his property and seized computers, external hard drives, iPads, a cell phone, documents and records, gold and silver coins "and took almost everything except Plaintiff's guns and his furniture." Dkt. No. 2 at p. 3 ¶ 12. At approximately 1:20 p.m., the Agents completed their search and presented Schanzle with a copy of the inventory of the property taken.

On October 30, 2018, Schanzle filed this lawsuit, pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), against Magistrate Judge Lane, Assistant United States Attorney Michael Galdo, FBI Special Agent Susana Haberman, IRS

---

[1] On October 22, 2018, Judge Lane granted the Government's Motion to Seal the Search Warrant and Related Papers because the they were part of an ongoing criminal investigation into Schanzle. See Dkt. No. 2 in 1:18-MJ-685-ML. Thus, the Warrant, the Application for the Search Warrant, the Affidavit in Support of the Application, and the incorporated attachments are all sealed in the criminal case. Schanzle remains under criminal investigation but has not been charged with any crimes as of this date. Accordingly, the Warrant and related documents are still under seal. See Dkt. No. 6.

Special Agents Laurel Vant, Jonathan Gebhart and James Neff, and "6 to 8 unknown agents" ("Defendants"). Schanzle's Amended Complaint primarily alleges that the issuance of the Warrant and the manner of its execution violated his constitutional rights. Specifically, Schanzle alleges: (1) the Warrant was invalid under the particularity requirement of the Fourth Amendment because the copy he was provided failed to describe the name of the person to be searched and the description of the property searched, and the affidavit of probable cause; (2) the Defendants' execution of the Warrant violated his Fourth Amendment rights; (3) Agent Gebhart's participation in the search exceeded his authority under 26 U.S.C. § 7608; and (4) the Defendants violated his rights under the Eighth Amendment. Schanzle seeks to recover $50,000 to $100,000 in monetary damages from each Defendant, a return of his property, and attorneys' fees and costs.[2]

On May 1, 2019, Defendants filed the instant Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(5) and 12(b)(6), arguing that Schanzle's Amended Complaint should be dismissed for lack of subject matter jurisdiction, insufficient service of process, and failure to state a claim. Because the Court finds that the Motion to Dismiss should be granted under Rule 12(b)(6), the Court need not address Defendants' alternative arguments.[3]

---

[2] Schanzle's Amended Complaint also requests "[a] permanent injunction against defendants upon the filing of this suit and notice to the defendants." Dkt. No. 2 at p. 12 ¶ 1. Schanzle, however, fails to explain what injunctive relief he is actually seeking and thus it is unclear what future harm he is trying to prevent. Schanzle's Amended Complaint only complains of past alleged constitutional violations. Accordingly, Schanzle has failed to state a viable claim for injunctive relief. In addition, Schanzle's request for injunctive relief is not appropriate in a *Bivens* action. "The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities." *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007). Thus, courts have found that injunctive and declaratory relief are not available in a *Bivens* action. *See, e.g.*, *Solida v. McKelvey*, 820 F.3d 1090, 1093 (9th Cir. 2016) ("[W]e join our sister circuits in holding that relief under Bivens does not encompass injunctive and declaratory relief where, as here, the equitable relief sought requires official government action.").

[3] In their Motion to Dismiss, Defendants argue that Schanzle lacks standing to file a *Bivens* action on behalf of third-party volunteers. See Dkt. No. 18 at p. 5-6. Schanzle's Response to the Motion clarifies that he is not asserting any claims on behalf of third parties in this case. Accordingly, Defendants' standing argument with regard to his Seventh Cause of Action is moot.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## III. ANALYSIS

### A.    Absolute Immunity

#### 1.   U. S. Magistrate Judge Lane

Schanzle alleges that United States Magistrate Judge Lane violated his Fourth Amendment rights by signing the Warrant without probable cause and without attaching a description of the persons or property to be searched or seized. Schanzle seeks to recover $50,000 from Judge Lane.

It is well settled law that a judge enjoys absolute immunity from liability for damages for judicial acts performed within his or her jurisdiction. *Pierson v. Ray*, 386 U.S. 547 (1967). "Few doctrines were more solidly established at common law than the immunity of judges from liability

for damages for acts committed within their judicial jurisdiction." *Id.* at 553-54. "This immunity applies even when the judge is accused of acting maliciously and corruptly, and it is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." *Id.* at 554 (internal quotations and citations omitted). The doctrine of absolute judicial immunity protects judges not only from liability, but also from suit. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Motive of the judicial officer is irrelevant when considering absolute immunity. *See Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991) ("The judge is absolutely immune for all judicial acts not performed in clear absence of all jurisdiction, however erroneous the act and however evil the motive."). Judges acting in their official capacity also enjoy absolute immunity from suits for injunctive relief because the Federal Courts Improvement Act of 1996 extended the doctrine of judicial immunity to injunctive relief and damages. *Machetta v. Moren*, 726 F. App'x 219, 220 (5th Cir. 2018).

Absolute judicial immunity is overcome in only two rather narrow sets of circumstances: First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity; and second, a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction. *Mireles*, 502 U.S. at 11-12. "A judge's acts are judicial in nature if they are 'normally performed by a judge' and the parties affected 'dealt with the judge in his judicial capacity.'" *Boyd v. Biggers*, 31 F.3d 279, 285 (5th Cir. 1994) (quoting *Mireles*, 502 U.S. at 12). "The limitation on judicial immunity applies not to improper exercises of jurisdiction, or even to conduct taken in 'excess of jurisdiction,' but only to conduct taken categorically without jurisdiction, like the conduct of 'a probate court, invested only with authority over wills and the settlement of estates of deceased persons . . . [that] proceed[s] to try parties for

public offences.'" *Creech v. Pater*, 701 F. App'x 456, 460 (6th Cir. 2017) (quoting *Bradley v. Fisher*, 80 U.S. 335, 351-52 (1871)).

In the case at bar, Judge Lane was clearly acting in his judicial capacity when he signed the Warrant at issue. *See Burns v. Reed,* 500 U.S. 478, 492 (1991) (stating that "the issuance of a search warrant is unquestionably a judicial act"); *Creech,* 701 F. App'x at 460 ("signing a Warrant is a function normally performed by a judge"); *Raab v. McLoed*, 2019 WL 2511221, at *2 (W.D. Mich. June 18, 2019) ("There is no doubt that approving a search warrant was a judicial act and that Judge Blubaugh was acting within his jurisdiction in doing so. Accordingly, Judge Blubaugh is absolutely immune from liability."); *Sadowski v. Dyer*, 2019 WL 2085994, at *5 (D. Conn. May 13, 2019) ("[I]ssuing an arrest or search warrant is a judicial act . . . ."). Schanzle does not complain of any actions taken by Judge Lane that were nonjudicial in nature; nor does he show that Judge Lane was acting in the clear absence of all jurisdiction. Accordingly, Judge Lane is entitled to absolute judicial immunity.

### 2. AUSA Michael Galdo

Schanzle alleges that AUSA Michael Galdo, the federal prosecutor responsible for seeking the Warrant in this case, violated his Fourth Amendment rights because he "should have known that a warrant without a description with particularity of the place to be searched, and a detailed description of the things to be seized, is an invalid warrant." Dkt. No. 17 at p. 5. Schanzle seeks $50,000 in damages against Defendant Galdo.

Prosecutors like Defendant Galdo enjoy absolute immunity from civil rights actions seeking monetary damages related to "initiating a prosecution and . . . presenting the State's case" as well as any activities "intimately associated with the judicial phase of the criminal process." *Esteves v. Brock*, 106 F.3d 674, 677 (5th Cir. 1997) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430-31

(1976)). The Supreme Court has held that a prosecutor has absolute immunity for an appearance before a judge in support of an application for a search warrant and the presentation of evidence in support of a motion for a search warrant because those actions "clearly involve the prosecutor's 'role as advocate for the State,' rather than his role as 'administrator or investigative officer.'" *Burns v. Reed*, 500 U.S. 478, 493 (1991) (quoting *Imbler*, 424 U.S. at 430-31); *see also Kalina v. Fletcher*, 522 U.S. 118, 129 (1997) (finding that a prosecutor's activities in connection with the preparation and filing of the information and the motion for an arrest warrant are protected by absolute immunity); *Richardson v. Scholz*, 194 F.3d 1309 (5th Cir. 1999) (finding that district attorneys were entitled to prosecutorial immunity from plaintiff's claim that the defendants conspired to obtain a search warrant illegally). Schanzle alleges no facts against Defendant Galdo that would destroy his absolute immunity and Schanzle's claims against Defendant Galdo should therefore be dismissed.

## B.    Qualified Immunity

As noted, Schanzle filed this lawsuit pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971). In *Bivens*, the Supreme Court held that an individual injured by a federal agent's alleged violation of the individual's constitutional rights may bring an action for damages against the agent, providing deterrence against and relief for the deprivation of federally guaranteed rights caused by a person acting under color of federal law. A *Bivens* action mirrors those brought pursuant to 42 U.S.C. § 1983, which applies to a person acting under color of state law. *Izen v. Catalina*, 398 F.3d 363, 367 n.3 (5th Cir. 2005). To state a *Bivens* claim, Schanzle must allege sufficient facts to establish that the Defendants are federal actors and that the Defendants, while acting under color of federal law, violated Schanzle's rights under the Constitution or laws of the United States. *Bivens*, 403 U.S. at 395-96. *Bivens* provides a cause of

action against federal agents only in their individual capacities and requires a showing of personal involvement. *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 70-71 (2001); *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998).

Defendants argue that all of Schanzle's claims in this case should be dismissed because Defendants are entitled to qualified immunity. As with § 1983 actions against state and local officials, a claimant seeking relief under *Bivens* must overcome the federal official's qualified immunity. *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 253 (5th Cir. 2017). "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

Once invoked, a plaintiff bears the burden of rebutting qualified immunity by showing: (1) that the officials violated a statutory or constitutional right, and (2) that the right was "'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam) ("When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense."). Law is "clearly established" for these purposes only if "the contours of the right [were] sufficiently clear that a reasonable official would understand that what he [was] doing violate[d] that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). An official who violates a constitutional right is still entitled to qualified immunity if his or her actions were objectively reasonable. *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir. 1993). At bottom, a plaintiff must

show that "no reasonable officer could have believed his actions were proper." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

The Court will address each of Schanzle's claims to determine whether he has demonstrated that the federal agents violated a statutory or constitutional right and that the right was "clearly established" at the time of the challenged conduct.

       1.   <u>Fourth Amendment Particularity Claim</u>

The Warrant signed by Judge Lane in this case expressly referred to the following attachments: (1) a 32-page affidavit of probable cause prepared by Agent Gebhart; (2) "Attachment A," which described the property and structures to be searched; and (3) "Attachment B," which described the evidence, fruits and instrumentalities to be seized during the search. *See* Sealed Dkt. No. 3 in 1:18-MJ-685-ML.

In his First and Second Causes of Action in his Amended Complaint, Schanzle alleges that the Warrant was invalid under the particularity requirement of the Fourth Amendment because the copy of the Warrant he was provided at the time of the search failed to include the name of the person to be searched and the description of the property to be searched, as well as the affidavit of probable cause. Schanzle complains that although the Warrant stated, "Please See Attachment A" under the "identify the person or describe the property to be searched and give its location" and "Please See Attachment B" when referring to the probable cause affidavit, neither attachment was actually attached to the Warrant at the time of the search. Schanzle appears to argue both that (1) the search was invalid because the copy of the Warrant he was provided at the time of the search omitted the supporting attachments, and (2) the Warrant was facially invalid because it omitted the attachments particularly describing the name of the person to be searched and the property to be searched. Both arguments fail.

*a. Failure to provide a copy of the attachments*

Schanzle argues that the search violated the Fourth Amendment because he was only provided with the Warrant and the not the attachments at the time of the search. This argument is foreclosed by Supreme Court and Court of Appeals precedent.  In *Groh v. Ramirez*, 540 U.S. 551, 562 n.5 (2004), the Supreme Court stated that "neither the Fourth Amendment nor Rule 41 of the Federal Rules of Criminal Procedure requires the executing officer to serve the warrant on the owner before commencing the search." The Supreme Court elaborated on this issue two years later in *United States v. Grubbs*, 547 U.S. 90, 98-99 (2006), when it rejected the petitioner's argument that a property owner must be presented with a warrant containing the triggering condition at time of the search:

> This argument assumes that the executing officer must present the property owner with a copy of the warrant before conducting his search. In fact, however, neither the Fourth Amendment nor Federal Rule of Criminal Procedure 41 imposes such a requirement. *See Groh v. Ramirez*, 540 U.S. 551, 562 n. 5 (2004). The absence of a constitutional requirement that the warrant be exhibited at the outset of the search, or indeed until the search has ended, is . . . evidence that the requirement of particular description does not protect an interest in monitoring searches. The Constitution protects property owners not by giving them license to engage the police in a debate over the basis for the warrant, but by interposing, *ex ante*, the deliberate, impartial judgment of a judicial officer . . . between the citizen and the police and by providing, *ex post*, a right to suppress evidence improperly obtained and a cause of action for damages. (citations and internal quotations omitted).

Thus, the Fourth Amendment does not require the executing officer to present the property owner with a copy of the warrant before conducting his search.

Numerous Courts of Appeals have held that a property owner is not entitled to have a copy of all supporting attachments at the time of the search. In *United States v. Pulliam*, 748 F.3d 967, 973 (10th Cir. 2014), the Tenth Circuit rejected the property owner's argument that the copy of

the warrant provided to him at the search violated the Fourth Amendment because it omitted the

attachments which particularly described the items to be seized, reasoning as follows:

> [U]nder *Grubbs*, persons targeted by a search warrant have no right
> rooted in the Fourth Amendment's particularity clause in using their
> copy of the warrant in an attempt to monitor or control the search
> during its execution. . . . On the contrary, the plain language of the
> Fourth Amendment requires us to focus solely on the warrant as
> issued to police rather than any copy given to the person or persons
> targeted by the search. This focus on the warrant as issued to the
> police is consistent with the particularity clause's purpose of
> "allow[ing] the executing officers to distinguish between items that
> may and may not be seized." (internal citations omitted).

*See also Blackburn v. United States*, 2018 WL 1940314, at *5 (N.D. Tex. Feb. 26, 2018) ("Neither

the Fourth Amendment nor Rule 41 requires the executing officer to serve a search warrant on the

owner before beginning the search.") (citing *Grubbs*), *report and recommendation adopted*, 2018

WL 1932823 (N.D. Tex. Apr. 24, 2018), *appeal docketed*, No. 18-10550 (5th Cir. May 7, 2018);

*Richardson v. Bridges*, 2015 WL 13598319, at *7 (E.D. Tex. Dec. 17, 2015) ("[T]he Fourth

Amendment does not require the executing officer to present the property owner with a copy of

the warrant *before* conducting the search."); *United States v. Jones*, 949 F. Supp. 2d 316, 322 (D.

Mass. 2013) (holding that the search did not violate the Fourth Amendment where the agents failed

to show the property owner the sealed affidavits supporting the warrant).

Based on the foregoing law, Schanzle's argument that his Fourth Amendment rights were

violated because he was not provided a copy of the Warrant's supporting attachments at the time

of the search is without merit.

### b. *Was the warrant facially invalid?*

The Fourth Amendment requires a warrant to "particularly describe[e] the place to be

searched, and the persons or things to be seized." U.S. CONST. amend. IV. The Fourth

Amendment's particularity requirement demands that the place to be searched and the items to be

seized be described with sufficient particularity so as to leave "nothing . . . to the discretion of the officer executing the warrant." *Marron v. United States*, 275 U.S. 192, 196 (1927). The particularity requirement provides "written assurance that the Magistrate actually found probable cause to search for, and to seize, every item mentioned." *Groh v. Ramirez* 540 U.S. 551, 560 (2004). The requirement also prevents "general searches" by confining the discretion of officers and authorizing them to seize only particular items. *See Williams v. Kunze*, 806 F.2d 594, 598 (5th Cir. 1986) ("The items to be seized must be described with sufficient particularity such that the executing officer is left with no discretion to decide what may be seized."). Finally, the particularity requirement "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *Groh*, 540 U.S. at 561 (internal citations and quotations omitted). "The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." *Massachusetts v. Sheppard*, 468 U.S. 981, 988 (1984) (citing *Stanford v. Texas*, 379 U.S. 476 (1965)).

In support of his argument that the Warrant was facially invalid, Schanzle relies on the Supreme Court's decision in *Groh*. *See* Plaintiff's Response, Dkt. No. 17 at p. 5. In *Groh*, 540 U.S. at 554, a federal agent prepared and signed an application for a warrant stating that the search was for specified weapons, explosives, and records. The application was supported by the agent's detailed affidavit setting forth his basis for believing that such items were on the claimant's ranch and was accompanied by a warrant form that he completed. *Id.* The Magistrate Judge signed the warrant form even though it did not identify any of the items that the government intended to seize. *Id.* The portion calling for a description of the "person or property" described the claimant's house, not the alleged weapons, and the warrant did not incorporate by reference the application's

itemized list. *Id.* The agent led federal and local law enforcement officers to the ranch the next day but found no illegal weapons or explosives. *Id.* at 555. The claimant sued the agent and others under *Bivens*, alleging a Fourth Amendment violation. *Id.*

The Supreme Court held that "the warrant was plainly invalid" and was deficient in particularity because it failed to provide any description of the type of evidence sought. *Id.* at 557. The Court found that "[t]he fact that the *application* adequately described the 'things to be seized' does not save the *warrant* from its facial invalidity. The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *Id.* at 557 (emphasis in original). However, the Court clarified that it was not holding "that the Fourth Amendment prohibits a warrant from cross-referencing other documents," noting that "most Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant." *Id.* at 557-58 (citations omitted). However, the Court did not address the matter of incorporation since the warrant at issue in the case did not incorporate other documents by reference. *Id.* at 558.

Unlike *Groh*, the Warrant in the instant case clearly incorporated the supporting documents by reference. As noted, the Warrant in this case expressly referred to the following attachments: (1) a 32-page affidavit of probable cause prepared by Agent Gebhart; (2) "Attachment A," which described the property and structures to be searched; and (3) "Attachment B," which described the evidence, fruits and instrumentalities to be seized during the search. *See* Sealed Dkt. No. 3 in 1:18-MJ-685-ML. Although these attachments were not presented to Schanzle at the time of the search because they were under seal, the Warrant clearly incorporated the supporting documents by reference. The Court finds these attachments sufficiently particular to describe the name and the

property to be searched and seized. Accordingly, Schanzle's reliance on *Groh* is misplaced as it did not address the incorporation issue.

Numerous Courts of Appeals have addressed the incorporation issue and have held that the particularity requirement of the Fourth Amendment may be satisfied by cross-reference in the warrant to separate documents that identify the property in sufficient detail. Thus, in *United States v. Hurwitz*, 459 F.3d 463 (4th Cir. 2006), the property owner, like Schanzle, argued that the search warrant was invalid because it did not, on its face, describe any of the property to be seized, but instead simply referred to an attachment that was submitted with the application for the search warrant but not presented at the search. The property owner argued that because the attachment did not accompany the warrant at the time of the search, the particulars contained in the attachment could not be construed to be part of the search warrant. *Id.* at 470. The Fourth Circuit rejected this argument, finding that "[t]he particularity requirement of the Fourth Amendment may be satisfied by cross-reference in the warrant to separate documents that identify the property in sufficient detail." *Id.* The Court found that the search warrant properly cross-referenced the attachment which, in turn, supplied the requisite particularity to the search warrant, regardless of whether the attachment accompanied or was appended to the search warrant at the time it was executed. *Id.* at 472. "We see nothing in the Constitution requiring that an officer possess or exhibit, at the time of the search, documents incorporated into a warrant as an additional safeguard for the particularity requirement." *Id.* at 472-73. Accordingly, the Court found that the warrant was not invalid under the Fourth Amendment.[4] *See also Pulliam*, 748 F.3d at 972 (holding that "a warrant may cross-

---

[4] In *Hurwtiz*, the Fourth Circuit acknowledged that several other Courts of Appeals had previously held that a warrant would be invalid if it did not refer to items to be seized on the face of the warrant and instead referenced attachments. *See* 459 F.3d at 471 (citing *Bartholomew v. Pennsylvania*, 221 F.3d 425, 428-29 (3rd Cir. 2000)); *United States v. McGrew*, 122 F.3d 847, 849-50 (9th Cir.1997); *United States v. Dahlman*, 13 F.3d 1391, 1395 (10th Cir.1993); *United States v. Dale*, 991 F.2d 819, 846-47 (D.C. Cir. 1993) (per curiam); *United States v. Morris*, 977 F.2d 677, 681 n.3 (1st Cir.1992); *United States v. Curry*, 911 F.2d

reference other documents, such as the affidavit in support of the application, to satisfy the particularity requirement"); *United States v. Triplett*, 684 F.3d 500, 505 (5th Cir. 2012) ("The law permits an affidavit incorporated by reference to amplify particularity, notwithstanding that, by its terms, the Fourth Amendment 'requires particularity in the warrant, not in the supporting documents.'") (quoting *Groh,* 540 U.S. at 557-58); *United States v. Allen*, 625 F.3d 830, 836 (5th Cir. 2010) ("Simply incorporating the affidavit and attachments, which stated specifically what the search entailed and what was to be seized, by reference in the warrant could have cured the deficiency of the warrant."); *Baranski v. Fifteen Unknown ATF Agents*, 452 F.3d 433, 440 (6th Cir. 2006) (holding that the Fourth Amendment had been satisfied through express incorporation of supporting affidavit that described with particularity items to have been seized, even though search warrant itself did not describe them); *United States v. Gamboa*, 439 F.3d 796, 807 (8th Cir. 2006) ("Unlike the warrant in *Groh*, the warrant in this case incorporated by reference 'Exhibit A,' which listed in detail the items to be seized, and '[a]n affidavit may provide the necessary particularity for a warrant if it is either incorporated into or attached to the warrant.'").

While the Supreme Court has not addressed the exact issue presented in this case, it has shed some light on the issue of incorporation. In *Grubbs*, the petitioner argued that an anticipatory search warrant violated the particularity requirement because the copy of the warrant he was provided failed to contain the affidavit of probable cause which specified the triggering condition (successful delivery of a videotape to the petitioner's residence). 547 U.S. at 92-93. The Supreme Court held that the warrant did not violate the Fourth Amendment's particularity requirement. *Id.* at 99. First, the Court emphasized that "[T]he Fourth Amendment . . . does not set forth some

72, 77 (8th Cir.1990). Given that these cases were all decided before *Grubbs*, and the Fifth Circuit's statements that "[t]he law permits an affidavit incorporated by reference to amplify particularity," the Court will rely on the reasoning in *Hurwitz*, *Baranski*, *Gamboa*, and their progeny.

15

general 'particularity requirement.'" *Id.* at 97. "It specifies only two matters that must be 'particularly describ[ed]' in the warrant: "the place to be searched" and "the persons or things to be seized." *Id.* Thus, the Court noted that it has rejected efforts to expand the scope of this provision to embrace unenumerated matters and has found that search warrants do not need to "include a specification of the precise manner in which they are to be executed." *Id.* at 98 (quoting *Stanford*, 379 U.S. at 481). Accordingly, the Court held that the "particularity requirement does not include the conditions precedent to execution of the warrant." *Grubbs*, 547 U.S. at 98.

The *Grubbs* Court also rejected the property owner's argument that the triggering condition must by identified on the face of the warrant, finding that "[t]he Fourth Amendment does not require that the warrant set forth the magistrate's basis for finding probable cause, even though probable cause is the quintessential precondition to the valid exercise of executive power." *Id.* (internal citation omitted). Last, the *Grubbs* Court rejected the property owner's argument that listing the triggering condition in the warrant is necessary to assure the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search. *"*Because the Fourth Amendment does not require that the triggering condition for an anticipatory search warrant be set forth in the warrant itself, the Court of Appeals erred in invalidating the warrant at issue here." *Id*. at 99.

Based on the foregoing, Schanzle's argument that the Warrant is invalid because it failed to include the name of the person to be searched, the property to be searched and the affidavit of probable cause on the face of Warrant is without merit. The Warrant in this case incorporated by reference the affidavit of probable cause, the property to be searched, and the evidence to be seized. These attachments clearly identify the property to be searched and evidence to be seized with particularity.

Accordingly, Schanzle has failed to allege a violation of a *clearly established* constitutional right and the Defendants are entitled to qualified immunity with regard to the Fourth Amendment particularity claim.

2. The execution of the Warrant

In Schanzle's Third, Fourth, Sixth and Seventh Causes of Action, he alleges that the Defendants violated his Fourth Amendment rights in the manner in which they executed the Warrant. Specifically, Schanzle claims the Defendants violated his Fourth Amendment rights by "converging on Plaintiff, barging into his home under color of federal authority, [rifling] through his personal effects, [seizing] his life savings and all documents with which he could pay his bills and sustain himself . . . flexing their federal might . . . [applying] unnecessary force, humiliation, and [bending him to their will]." Dkt. No. 2 at 5-6. Schanzle appears to be alleging that the search was unreasonable and constituted excessive force under the Fourth Amendment. None of Schanzle's allegations rise to the level of alleging a violation of a constitutional right.

The Fourth Amendment's requirement that all searches must be reasonable extends to the manner and scope of the search. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Tennessee v. Garner*, 471 U.S. 1, 7-8 (1985). The Supreme Court "has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396. With regard to the execution of warrants, the Supreme Court has further noted that "in executing a warrant the police may find it necessary to interfere with privacy rights not explicitly considered by the judge who issued the warrant." *Dalia v. United States*, 441 U.S. 238, 257-58 (1979). "For example, police executing an arrest warrant commonly find it necessary to enter the suspect's home in order to take him into custody, and they thereby impinge on both privacy and freedom of movement." *Id.* In addition, "officers executing

search warrants on occasion must damage property in order to perform their duty." *Id.* All of these actions are reasonable under the Fourth Amendment.

Schanzle has failed to point to any facts which show that the search in this case was unreasonable. The undisputed facts show that the Defendants initiated the search of Schanzle's home and business on October 24, 2018 at 10:30 a.m. and completed the search at 1:20 p.m. The Defendants seized numerous items and gave Schanzle a copy of the inventory of the property when they left the premises. Other than his conclusory allegation that "unnecessary force" was applied, he has failed to allege that any of the Defendants acted unreasonably. *See Tuskan v. Jackson Cty.*, 134 F. Supp. 3d 1041, 1051 (S.D. Miss. 2015) (finding that the evidence makes plain that the agents acted in a reasonable, good-faith manner in performing a search of plaintiff's home and therefore he failed to allege a valid Fourth Amendment claim).

Schanzle has also failed to allege sufficient facts to support an excessive force claim under the Fourth Amendment. To prevail on an excessive force claim under the Fourth Amendment, a plaintiff must show (1) that he was seized, (2) that he suffered an injury, (3) which "resulted directly and only from the use of force that was excessive to the need, and (4) that the force used was objectively unreasonable." *Flores v. Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). To decide whether the seizure was objectively reasonable, the court must ask if the totality of the circumstances justified that kind of search or seizure. *Id.* (citing *Tennessee*, 471 U.S. at 8-9). The objective reasonableness of the force used requires the court to balance the amount of force used against the need for that force. *Flores*, 381 F.3d at 399.

Schanzle's excessive force claim fails because he has failed to alleged facts showing that he suffered an injury. "A plaintiff alleging an excessive force violation must show that she has suffered 'at least some injury.'" *Id.* at 397 (citing *Jackson v. R.E. Culbertson*, 984 F.2d 699, 700

(5th Cir. 1993)). The injury must "be more than a de minimis injury and must be evaluated in the context in which the force was deployed." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001).

Schanzle has failed to allege facts showing that he suffered anything more than a de minimis injury in this case. Although Schanzle complains that he was humiliated and embarrassed by the search, "only substantial psychological injuries are sufficient to meet the injury element of a claim for excessive force under the Fourth Amendment." *Carter v. Diamond URS Huntsville, LLC*, 2016 WL 8711499, at *5 (S.D. Tex. Sept. 30, 2016) (citing *Flores*, 381 F.3d at 397-98). Schanzle's complaints of humiliation and embarrassment do not rise to the level of a constitutional violation. *See Reese v. Skinner*, 322 F. App'x 381, 382 (5th Cir. 2009) (allegations that officers humiliated plaintiff did not state a viable constitutional claim); *Robertson v. Plano City of Texas*, 70 F.3d 21, 24 (5th Cir. 1995) ("[O]ur circuit has recognized as a general rule that "mere threatening language and gestures of a custodial office[r] do not, even if true, amount to constitutional violations."); *Jackson v. Liberty Cty.*, 860 F. Supp. 360, 363 (E.D. Tex. 1994) ("Claims of hurt feelings, humiliation, and other heartfelt, yet objectively trivial indignities, are not of Constitutional moment . . . .").

Schanzle also fails to allege that he was physically injured in any way during the search. Although he complains of excessive dust from the drilling of the safe, he has failed to allege anything other than di minimis injury. *See, e.g., Tarver v. City of Edna*, 410 F.3d 745, 751-52 (5th Cir. 2005) (finding plaintiff failed to show requisite injury because he did "not allege any degree of physical harm greater than *de minimis* from the handcuffing").

Last, Schanzle does not allege that any property was excessively or unnecessarily damaged during the search. The Supreme Court has acknowledged that "officers executing search warrants

on occasion must damage property in order to perform their duty." *Dalia*, 441 U.S. at 258. While Schanzle complains that the agents used a drill to pick the lock of his safe, he has failed to allege any facts showing any "excessive or unnecessary"[5] destruction of property in this case or the agents acting unreasonably in opening the safe. *See Richie v. Wharton Cty. Sheriff Dep't Star Team*, 513 F. App'x 382, 386 (5th Cir. 2013) (finding that "the officers' conduct did not involve the excessive or unnecessary destruction of property and that any damage was incidental to the execution of the warrant"); *Clark v. Fiske*, 2005 WL 3617731, at *4 (W.D. Tex. Sept. 20, 2005) (finding that the actions of the officers in inflicting damage to the front door, the bedroom windows and nearby areas, and the alarm were reasonable under the circumstances). Accordingly, Schanzle has failed to establish a prima facie case of excessive force in this case.

Because Schanzle has failed to that the search and seizure of his property was unreasonable under the Fourth Amendment, his "Demand for Return of Property" (Dkt. No. 16) should be denied.

### 3. Defendant Gebhart's authority

In his Fifth Cause of Action, Schanzle alleges that Defendant Gebhart exceeded his statutory authority under 26 U.S.C. § 7608 to participate in the criminal investigation of Schanzle. Schanzle contends that Defendant Gebhart "is limited to the enforcement of subtitle E and other laws pertaining to liquor, tobacco, and firearms." Dkt. No. 2 at ¶ 46. Schanzle appears to be relying on 26 U.S.C. § 7608(a), which deals with the IRS enforcement of laws "pertaining to liquor, tobacco, and firearms." However, 26 U.S.C. § 7608(b) provides the following:

---

[5] *See United States v. Ramirez*, 523 U.S. 65, 71 (1998) ("Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search are not subject to suppression.").

(1) Any criminal investigator of the Intelligence Division of the Internal Revenue Service whom the Secretary charges with the duty of enforcing any of the criminal provisions of the internal revenue laws, any other criminal provisions of law relating to internal revenue for the enforcement of which the Secretary is responsible, or any other law for which the Secretary has delegated investigatory authority to the Internal Revenue Service, is, in the performance of his duties, authorized to perform the functions described in paragraph (2).

(2) The functions authorized under this subsection to be performed by an officer referred to in paragraph (1) are—

(A) to execute and serve search warrants and arrest warrants, and serve subpoenas and summonses issued under authority of the United States;

(B) to make arrests without warrant for any offense against the United States relating to the internal revenue laws committed in his presence, or for any felony cognizable under such laws if he has reasonable grounds to believe that the person to be arrested has committed or is committing any such felony; and

(C) to make seizures of property subject to forfeiture under the internal revenue laws.

26 U.S.C.A. § 7608(b).

Accordingly, Defendant Gebhart has authority under 26 U.S.C. § 7608(b) to participate in the underlying criminal investigation. Schanzle's claim is meritless.

4. Eighth Amendment Claim

In Schanzle's Eighth and final Cause of Action, he alleges that the Defendants violated his Eighth Amendment rights by "seizing Plaintiff's money and bank accounts" thereby inflicting "cruel and unusual punishment." Dkt. No. 2 at ¶¶ 86-87. "The protections of the Eighth Amendment against cruel and unusual punishment are limited in scope to convicted prisoners." *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996) (citing *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977); *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)). Because Schanzle is not a convicted

prisoner, he has failed to assert a viable cruel and unusual punishment claim under the Eighth Amendment in this case. *See Cobarobio v. Midland Cty., Texas*, 2015 WL 13608102, at *13 (W.D. Tex. Jan. 7, 2015) (holding that plaintiff could not rely on the Eighth Amendment's prohibition of cruel and unusual punishment because plaintiff was not a convicted prisoner), *aff'd*, 695 F. App'x 88 (5th Cir. 2017).

Although not entirely clear, it appears that Schanzle also is attempting to allege a cause of action under the Excessive Fines Clause of the Eighth Amendment. In support of his claim, Schanzle cites *Austin v. United States*, 509 U.S. 602, 618 (1993). In *Austin*, one month *after* a state court sentenced the petitioner to one count of possessing cocaine with intent to distribute in violation of South Dakota law, the United States filed an *in rem* action in Federal District Court against the mobile home and auto body shop under 21 U.S.C. §§ 881(a)(4) and (a)(7), which provide for the forfeiture of vehicles and real property used to facilitate the commission of drug-related crimes. *Id.* at 604-05. The petitioner argued that the forfeiture of the properties would violate the Eighth Amendment's prohibition against excessive fines. The government disagreed, arguing that the forfeiture proceeding was not subject to the Excessive Fines Clause because the proceedings were civil and remedial in nature. The Supreme Court disagreed, holding that the Eighth Amendment's prohibition against excessive fines applies to *in rem* civil forfeiture proceedings under 21 U.S.C. §§ 881(a)(4) and (a)(7) because those proceedings are properly considered "punishment." *Id.* at 622.

Schanzle's reliance on *Austin* in support of his argument that the Excessive Fines Clause was somehow violated in this case is misplaced. Unlike the petitioner in *Austin*, Schanzle's property was not seized after a conviction under an *in rem* civil forfeiture proceeding under 21 U.S.C. §§ 881(a)(4) and (a)(7); rather, Schanzle's property was seized pursuant to a valid search

warrant issued during an ongoing criminal investigation. If a search warrant has been properly issued and executed, then unquestionably the executing officers may seize those items particularly described in the warrant as the objects of the seizure. *See Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) (noting that an arrest warrant founded on probable cause would justify a search and seizure of a private residence); *United States v. Monsanto*, 491 U.S. 600, 615 (1989) ("Indeed, it would be odd to conclude that the Government may not restrain property, such as the home and apartment in respondent's possession, based on a finding of probable cause, when we have held that (under appropriate circumstances), the Government may restrain persons where there is a finding of probable cause to believe that the accused has committed a serious offense."); *see also Luis v. United States*, 136 S. Ct. 1083, 1100 (2016) ("[T]he Government may freeze tainted assets before trial based on probable cause to believe that they are forfeitable."). Accordingly, *Austin* does not provide support for his claim and he has failed to demonstrate the applicability of the Eighth Amendment in this case.

Because Schanzle has failed to allege a violation of a clearly established right in this case, Defendants are entitled to qualified immunity with regard to all of his claims.

## C.    Conclusion

Based on the foregoing, the Court finds Defendants Magistrate Judge Lane and Assistant United States Attorney Galdo are entitled to absolute immunity in this case. The Court further finds that the remaining Defendants are entitled to qualified immunity. Accordingly, the Court recommends that the Motion to Dismiss should be granted.

## IV. RECOMMENDATION

The undersigned **RECOMMENDS** that the District Court **GRANT** Defendants' Motion to Dismiss (Dkt. No. 18) and **DISMISS** Plaintiff David Schanzle's case in its entirety. The undersigned **FURTHER RECOMMENDS** that the District Court **DENY** Plaintiff's Demand for Return of Property (Dkt. No. 16). The undersigned also **ORDERS** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Robert Pitman.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** August 1, 2019.


_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE